DaShawn Hayes, State Bar No. 355912
The Hayes Law Firm, A Professional Law Corporation
5757 Wilshire Blvd., Ste 656
Los Angeles, CA 90036
Tel: 323-570-0485
Email: dphayesesquire@gmail.com

Attorneys for Plaintiff, Hirose Enterprises, LLC

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

HIROSE ENTERPRISES, LLC

      Plaintiff,

     vs.

JOHN HOLIDAY, professionally known as FOREMOST POETS, PARKWOOD ENTERTAINMENT, LLC, SONY MUSIC ENTERTAINMENT, SONY MUSIC PUBLISHING (US), LLC, and W CHAPPELL MUSIC CORP. d/b/a WC MUSIC CORP.

      Defendants.

Case No.: 2:25-cv-06973

JUDGE:

Maame Ewusi-Mensah Frimpong

MAGISTRATE JUDGE:

A. Joel Richlin

**SECOND AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT AND BREACH OF CONTRACT**

**DEMAND OF JURY TRIAL**

Comes now, Plaintiff, Hirose Enterprises, LLC, by and through its counsel of record who hereby files this Second Amended Complaint against Defendants, each of them, and alleges as follow:

## INTRODUCTION

1

**SECOND AMENDED COMPLAINT**

1. This action arises from Defendants' unauthorized use of Plaintiff's copyrighted sound recording and musical composition "Moonraker" in the song "Alien Superstar," as performed by Beyoncé Knowles-Carter. Plaintiff owns the master recording of "Moonraker" and has continuously maintained ownership through a chain of written and signed assignments spanning more than twenty-five years.

2. Plaintiff brings this action for the infringement of registered copyrights in violation of The U.S. Copyright Act brought by the Plaintiff, Hirose Enterprises, LLC, (hereinafter referred to as "Plaintiff"), with pendent claims for breach of contract to recover compensatory, statutory, injunctive relief and punitive damages as a result of the Defendants' unauthorized exploitation of the copyrighted musical work of Plaintiff.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. 1331, 1332, 1338 and 17 U.S.C. 101, et seq as this action is based upon federal copyright law. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a).

4. This Court has personal jurisdiction over the Defendants as, based on information and belief, each has purposefully committed, within the state, the acts from which Plaintiffs' claim arises and/or committed tortious acts outside

2

**SECOND AMENDED COMPLAINT**

California knowing and intending that such acts would cause injury to Plaintiffs within the state. Moreover, Defendants have purposefully availed themselves of the benefits of conducting business within the State of California by directing their activities with respect to the infringing work, including their marketing and promotion of the infringing work, to California residents, who are able to purchase, download and stream the infringing compositions and recordings. Upon information and belief, Defendants, and each of them, have received substantial revenues from their exploitation of the infringing works in California. Furthermore, Defendants conduct continuous, systematic, and routine business within the State of California and/or within this district. Defendants regularly conduct business in Los Angeles, California and Defendants committed the infringing and other tortious conduct underlying Plaintiff's claims in this judicial district. Consequentially, by virtue of their pervasive business contacts and transactions within the State of California, Defendants are constructively aware and can reasonably expect and/or anticipate being sued in this jurisdiction.

5. Venue is proper in this district pursuant to 28 U.S.C. 1391(b)(2) and 1400(a) as a substantial part of the events giving rise to this claim occurred in this district. Defendants regularly conduct business in the Central District of California, State of California and substantial acts of infringement have occurred in this district. Defendants expect or should have reasonably expected their acts to have

3

**SECOND AMENDED COMPLAINT**

consequences in this district. Defendants have directed their activities and distribution and marketing of musical recordings to residents of this district and such residents were able to purchase and download infringing musical recordings by way of mechanisms controlled or authorized by the Defendants.

## PARTIES

6. Plaintiff Hirose Enterprises, LLC is a limited liability company incorporated in Florida on August 6, 2025, and licensed to and doing business in the State of California. Plaintiff is the assignee of all right, title, and interest in the Soundmen on Wax catalog, including all causes of action for past, present, and future infringement, by written assignment from Shuji Hirose, as described more fully below.

7. Defendant John Holiday, professionally known as "Foremost Poets" aka "Johnny Dangerous" is an individual, who, upon information and belief, is a citizen of the State of New Jersey. He is known for the production, recordation and composition of music that is distributed worldwide via the internet and other digital devices. Defendant is credited as an author and/or composer on the infringing "Alien Superstar" sound recording. Defendant also authored the musical composition and performed vocals on the Plaintiff's "Moon Raker" sound recording.

4

**SECOND AMENDED COMPLAINT**

8. Upon information and belief, Defendant Parkwood Entertainment, LLC, is an active corporation organized and existing pursuant to the laws of the State of New York with a principal place of business located in the Central District, State of California. Plaintiff is informed and believes, and thereupon alleges, that Parkwood Entertainment, LLC does substantial, continuous and systematic business in the State of California and in this judicial district. Defendant Parkwood Entertainment, LLC is responsible for exploitation and distribution of sound recordings and collection of music royalties from the publication of the infringing work on behalf of Beyonce Knowles-Carter, professionally known as "Beyonce." Defendant Parkwood Entertainment, LLC supervised the illegal reproduction of the infringing work, as described below, and authorized the illegal reproduction and distribution of the Plaintiff's copyright-protected work.

9. Upon information and belief, Sony Music Entertainment, a Delaware General Partnership is a one of the three largest distributors of recorded music in the world. While its headquarters is in New York, it has substantial facilities in the Central District and distributes recorded music in the Central District in a variety of media. Moreover, Sony Music Entertainment has been substantially involved in the distribution of the sound recording embodying Plaintiffs copyrighted work that is the subject of this lawsuit in the Central District, including through internet streaming services, selling of physical media such as vinyl and Compact Discs

5

**SECOND AMENDED COMPLAINT**

(CD), and that Sony Music Entertainment has derived financial compensation from such distribution.

10. Upon information and belief, Warner-Tamerlane Publishing Corp. is an active corporation organized and existing pursuant to the laws of the State of California. Plaintiff is informed and believes, and thereupon alleges, that Warner-Tamerlane Publishing Corp. does substantial, continuous and systematic business in the State of California and in this judicial district. Defendant Warner-Tamerlane Publishing Corp. is responsible for collecting music royalties from the publication of the infringing works on behalf of the authors and composers of the infringing work.

11. Upon information and belief, Sony Music Publishing (US), LLC is an active corporation organized and existing pursuant to the laws of the State of California. Plaintiff is informed and believes, and thereupon alleges, that Sony Music Publishing (US), LLC does substantial, continuous and systematic business in the State of California and in this judicial district. Defendant Sony Music Publishing (US), LLC is responsible for collecting music royalties from the publication of the infringing works on behalf of the authors and composers of the infringing work.

12. Defendant Beyonce Knowles-Carter, professionally known as "Beyonce" is an individual, who, upon information and belief, is a citizen of the

6

**SECOND AMENDED COMPLAINT**

State of California. She is known for the production, recordation and composition of music that is distributed worldwide via the internet and other digital devices. Defendant is credited as an author and/or composer on the infringing "Alien Superstar" sound recording and composition.

13. Defendant Honey Redmond, professionally known as "Honey DiJon" is an individual is an individual, who, upon information and belief, is a citizen of the State of California. She is known for the production, recordation and composition of music that is distributed worldwide via the internet and other digital devices. Defendant is credited as an author and/or composer on the infringing "Alien Superstar" sound recording and composition.

14. Defendant Luke Solomon is an individual, who, upon information and belief, is a citizen of the United Kingdom. He is known for the production, recordation and composition of music that is distributed worldwide via the internet and other digital devices. Defendant is credited as an author and/or composer on the infringing "Alien Superstar" sound recording and composition.

15. Defendant Chris Penny Solomon is an individual, who, upon information and belief, is a citizen of the State of California. He is known for the production, recordation and composition of music that is distributed worldwide via the internet and other digital devices. Defendant is credited as an author and/or composer on the infringing "Alien Superstar" sound recording and composition.

7

**SECOND AMENDED COMPLAINT**

16. Plaintiff alleges on information and belief that at all times mentioned herein, Defendants, and each of them, were the agents, managing agents, representatives, employees, successors and/or assignees, and co-conspirators of one other, and at all times relevant hereto, were acting within the course and scope of their authority as such agents, managing agents, representatives, employees, successors and/or assignees, and co-conspirators and legally responsible in some manner for the events and happenings referred to below, and proximately and legally caused injuries and damages to Plaintiff, as alleged below.

## FACTS

17. This is an action for the direct, contributory and vicarious copyright infringement, in violation of 17 U.S.C. §§ 101 et seq., arising from the unauthorized reproduction, distribution and/or public performance of Plaintiff's copyrighted musical work, "Moonraker." Plaintiff is informed and believes, and thereupon alleges, that Defendants are the writers, composers, performers, producers, record label, distributors, and publishers who were involved with the creation, release, reproduction, exploitation, licensing, and public performance of the infringing and derivative musical compositions "Alien Superstar" and the infringing sound recordings of "Alien Superstar," and the music video and other products embodying the infringing musical composition and sound recording "Alien Superstar," (collectively, the "Infringing Works"). Defendant Holiday,

8

**SECOND AMENDED COMPLAINT**

Knowles-Carter, Defendant Redmond, Defendant Solomon, and Defendant Penny received credit as composers and/or authors of the music and lyrics of "Alien Superstar." The corporate Defendants are, on information and belief, the publishing, distribution, recording labels and other entities that exploit the infringing song, "Alien Superstar."

18. In approximately 1998, Defendant John Holiday authored the sound recording and musical composition entitled "Moonraker" within the meaning of 17 U.S.C. § 201(a). Defendant Holiday authored the following lyrics, which were used as part of the introduction for "Moonraker" and performed the same on the sound recording, "Moonraker" at the 0:21 minute mark:

"Please do not be alarmed, remain calm

Do not attempt to leave the dancefloor

The DJ booth is conducting a troubleshoot of the entire system."

19. Beginning in January 1998, Plaintiff's predecessor-in-interest, Soundmen on Wax, Ltd. ("Soundmen"), entered into a series of written and signed exclusive recording agreements with Holiday.

20. On or about January 15, 1998, Holiday and Soundmen entered into a written and signed exclusive recording agreement for the tracks "Moonraker" and "Grave Lifter," pursuant to which Holiday was paid $1,500 per track. Under this agreement, Holiday transferred 100% of copyright ownership in the master

9

**SECOND AMENDED COMPLAINT**

recordings to Soundmen. The agreement provided for a 50/50 split of publishing and licensing revenues between Soundmen and Holiday, which was a contractual revenue-sharing arrangement and did not constitute a retention by Holiday of any co-ownership interest in the copyright.

21. In or about December 1999, Holiday and Soundmen entered into a written and signed exclusive recording agreement for the tracks "Facing The Impossible" and "Moonraker Phase II" (a remix), pursuant to which Holiday was paid $1,000. This agreement contained the same ownership structure as the January 1998 agreement.

22. In or about April 2000, Holiday and Soundmen entered into a written and signed exclusive recording agreement for the track "Space Traffic," under terms identical to the prior agreements.

23. Each of the foregoing agreements was in writing and signed by Holiday and a representative of Soundmen, as required by 17 U.S.C. § 204(a). Pursuant to these agreements, Holiday transferred all right, title, and interest in the master recordings and copyright ownership to Soundmen.

24. Soundmen, and subsequently its successors-in-interest, fully performed all obligations under the recording agreements, including payment of agreed-upon consideration to Holiday and the ongoing accounting and payment of Holiday's share of publishing and third-party licensing revenues.

**SECOND AMENDED COMPLAINT**

25. Performance further included the proper accounting and payment of publishing and mechanical royalties, including amounts deducted and remitted through digital distribution channels in accordance with industry practices, on a continuing and ongoing basis.

26. Soundmen developed and released recordings by Holiday under the artist name "Foremost Poets," with consistent compensation and ownership structure across all releases.

27. The following recordings were commercially released as 12-inch vinyl releases on the Soundmen on Wax label:

    (a)    "Grave Lifter" (catalog number SOW-415)—released May 1998;

    (b)    "Moonraker" (catalog number SOW-416)—released June 10, 1998, including the original version with an acapella version on Side B;

    (c)    "Facing The Impossible" (catalog number SOW-423)—released December 1998;

    (d)    "Moonraker Phase II" (catalog number SOW-433)—released January 2000;

    (e)    "Space Traffic" (catalog number SOW-447)—released August 2000.

11

**SECOND AMENDED COMPLAINT**

28. On approximately, June 10, 1998, Soundmen on Wax, LTD distributed and published the sound recording, "Moonraker:"



29. Soundmen, and subsequently its successors-in-interest, continued to commercially exploit the "Moonraker" catalog through subsequent Soundmen on Wax remix and digital releases, including reissues, remix packages, anniversary editions, and a 25th anniversary remix release. Additional catalog releases include catalog numbers SOW-561, SOW-582, SOW-659, and SOW-689.

30. This continuous commercial exploitation over more than twenty-five years further confirms Plaintiff's continuous ownership, control, and monetization of the "Moonraker" sound recording and musical composition.

12

**SECOND AMENDED COMPLAINT**

31. The chain of title to the copyright in "Moonraker" is as follows:

32. From 1998 until its dissolution, Soundmen on Wax, Ltd. held exclusive ownership of the master recording and copyright in "Moonraker" pursuant to the written and signed recording agreements described above.

33. Prior to the dissolution of Soundmen on Wax, Ltd., Shuji Hirose, the sole principal of Soundmen, assigned the catalogue and copyright interests—including all right, title, and interest in "Moonraker"—to himself individually. From approximately 2002 through 2025, Shuji Hirose continuously owned and controlled the Soundmen on Wax catalog in his individual capacity, including all associated intellectual property, and operated under the name Soundmen on Wax.

34. On or about August 6, 2025, Hirose Enterprises LLC was formally incorporated under the laws of the State of Florida. On that same date, Shuji Hirose assigned all right, title, and interest in the Soundmen on Wax catalog—including all rights in "Moonraker" and all causes of action for past, present, and future infringement—to Hirose Enterprises LLC pursuant to a written and signed assignment.

35. Prior to the formal incorporation of Hirose Enterprises LLC on August 6, 2025, certain actions—including the registration of the copyright in "Moonraker" with the United States Copyright Office (effective March 31, 2025) and the initiation of this action (July 29, 2025)—were undertaken in the name of Hirose

13

**SECOND AMENDED COMPLAINT**

Enterprises LLC. Upon its incorporation on August 6, 2025, Hirose Enterprises LLC ratified all such prior actions, and the assignment of all rights from Shuji Hirose to Hirose Enterprises LLC was made effective as of that date, encompassing all causes of action for past, present, and future infringement.

36. At all times relevant to this action, Plaintiff has maintained continuous ownership, control, and exclusive exploitation rights over the master recording and copyright in "Moonraker."

37. In or about 2015, Holiday entered into a written agreement with Shuji Hirose, doing business as Soundmen on Wax, regarding a new remix of "Moonraker" (the "2015 Agreement"). In the 2015 Agreement, which was signed by Holiday, Holiday confirmed and acknowledged 100% master recording ownership by Soundmen on Wax and the 50/50 publishing and licensing revenue split. The 2015 Agreement constitutes a written memorialization confirming the terms and ownership structure of the original 1998 recording agreements.

38. The United States Copyright Office has issued a certificate of registration for the sound recording "Moon-Raker (Main Mix)," bearing Registration Number SR 1-027-666, with an effective date of registration of March 31, 2025, and a registration decision date of April 3, 2025. The registration certificate identifies John Holiday as the author of the sound recording, lyrics, musical composition, and performance. The registration certificate identifies

14

**SECOND AMENDED COMPLAINT**

"Hirose Enterprise, LLC" as the copyright claimant. The transfer statement on the registration certificate states: "By written agreement."[Exhibit A].

39. The copyright registration certificate constitutes prima facie evidence of the validity of the copyright and the facts stated therein, including the ownership and transfer basis. 17 U.S.C. § 410(c).

40. "Moonraker" was licensed internationally under the following territorial license agreements, all of which were executed by Soundmen and/or its successors-in-interest as the exclusive owner of the master recording:

(a)    Germany: DJ Gigolo Records (approximately 1998–2003);

(b)    France and Belgium: Airplay Records (approximately 1999–2002);

(c)    United Kingdom: Junior London (approximately 2003–2008);

(d)    United Kingdom (digital): NRK Sound Division (approximately 2008–2013, non-exclusive).

41. Each of the foregoing licensing agreements was a limited, time-based license that did not transfer ownership. Plaintiff and its predecessors-in-interest retained exclusive worldwide ownership of the master recording and copyright at all times.

42. These licensing agreements further demonstrate that Plaintiff and its predecessors-in-interest continuously exercised the rights of copyright owners—

15

**SECOND AMENDED COMPLAINT**

specifically, the exclusive right to license the reproduction and distribution of "Moonraker"—throughout the relevant period.

43. Beginning in the mid-2000s and continuing through the present, Plaintiff and its predecessors-in-interest commercially exploited the Soundmen on Wax catalog through digital distribution platforms, including Traxsource and Beatport, maintaining continuous control and monetization of "Moonraker."

44. The commercial availability of "Moonraker" on these platforms, under Plaintiff's and its predecessors' control, was publicly visible and accessible to any entity conducting reasonable due diligence regarding the ownership of the recording.

45. Defendant Knowles-Carter is a critically acclaimed songwriter and recording artist, who, upon information and belief, owns, or has an ownership interest, in Defendant Parkwood. In addition to her ownership interest, Defendant Knowles-Carter has an exclusive recording artist agreement with Defendant Parkwood whereby she delivers compositions and sound recordings to Defendant Parkwood for publication.

46. To accomplish the same, Defendant Parkwood is under an exclusive licensing agreement with Defendant Sony Music Entertainment whereby Defendant Sony Music Entertainment distributes delivered compositions and

16

**SECOND AMENDED COMPLAINT**

sound recordings of Defendant Knowles-Carter through one of its recording imprints, Columbia Records.

47. In or around 2020, Defendant Knowles-Carter began the recording sessions for her seventh (7th) studio album, "Renaissance." The infringing album was recorded and performed in Los Angeles, California. Upon information and belief, Defendant Parkwood and Defendant Knowles-Carter enlisted the services of composers, Defendant Redmond, Defendant Solomon, and Defendant Penny, to assist in the production of Renaissance. Collectively, Defendants Knowles-Carter, Redmond, Solomon, and Penny composed and wrote the infringing work, "Alien Superstar."

48. Defendants Knowles-Carter, Defendant Redmond, Defendant Solomon, and Defendant Penny used an unauthorized sample of "Moonraker" in their sound recording, "Alien Superstar," which was released by Defendant Parkwood Entertainment, LLC and distributed by Defendant Sony Music Entertainment through its recording label imprint, Columbia Records, as a part of Defendant Knowles-Carter's album, "Renaissance."

49. "Alien Superstar" incorporates a portion of the sound recording "Moonraker"—specifically, the distinctive spoken-word intro—without authorization from Plaintiff. The spoken-word intro of "Moonraker" is an original, distinctive, and recognizable element of the work. It is qualitatively significant to

17

**SECOND AMENDED COMPLAINT**

the work as a whole, and its use in "Alien Superstar" is not de minimis. An ordinary listener hearing both works would recognize that "Alien Superstar" incorporates material from "Moonraker."

50. Upon completion of the album, Defendant Knowles-Carter delivered it to Defendant Parkwood and Sony Music Entertainment for publication and distribution. Upon information and belief, Defendant Parkwood and Defendant Sony Music Entertainment were aware that the infringing work, "Alien Superstar," was a part of the album and that Defendants Knowles-Carter, Redmond, Solomon, and Penny used an unauthorized sample of "Moonraker" in their sound recording, "Alien Superstar."

51. Plaintiff did not authorize the use of any portion of "Moonraker" in "Alien Superstar." Plaintiff did not grant a license, assignment, or any other authorization to any Defendant or any other party for such use.

52. Defendant Sony and Defendant WC also collects royalties from the exploitation of the infringing work on behalf of several publishers,  authors and composers. Defendant Sony Music Entertainment and Defendant Parkwood released and distributed the album "Renaissance" and the infringing work, "Alien Superstar" on July 29, 2022.  Defendants Sony Music Entertainment and Parkwood released and distributed the infringing work in the State of California, United States and worldwide for streaming on all major streaming services, including, but

18

**SECOND AMENDED COMPLAINT**

not limited to Apple Music, Tidal, Spotify, Youtube Music, Pandora, and Amazon Music.  The infringing work is accessible, and available for consumer use, in California by the Plaintiff and other California Residents through utilizing one of the streaming services. The aforesaid streaming services are available for use by California residents. Defendants Sony Music Entertainment and Parkwood have also released and distributed the infringing work in the State of California, United States and worldwide as a vinyl purchase at several retailers.

53. Defendant Parkwood and Defendant Sony Music Entertainment were aware of the unauthorized use of "Moonraker" in the infringing work, "Alien Superstar." Upon information and belief, Parkwood was aware, prior to entering into a license with Holiday for the use of "Moonraker" in "Alien Superstar," that Defendant Holiday did not have authority to license the master recording or copyright in "Moonraker." Upon information and belief, Parkwood knew or should have known, through the exercise of reasonable due diligence, that the copyright in "Moonraker" was owned by Plaintiff through a chain of written and signed assignments, and not by Holiday.

54. "Moonraker" had been commercially released and distributed internationally under the Soundmen on Wax label and subsequently under Plaintiff's control for more than twenty-five years. This extensive commercial

19

**SECOND AMENDED COMPLAINT**

history was publicly visible and would have provided inquiry notice to any entity conducting reasonable due diligence regarding the ownership of the recording.

55. Despite Parkwood's actual or constructive knowledge that Holiday did not hold the copyright in "Moonraker," Parkwood proceeded to incorporate a portion of "Moonraker" in "Alien Superstar" without obtaining authorization from Plaintiff.

56. Yet, despite widespread domestic and international distribution and publication of the sound recording, "Moonraker," by Soundmen on Wax, LTD, since 1998, Defendants Knowles-Carter, Parkwood, Sony Music Entertainment, Defendant WC, and Sony Music Publishing opted to contract with Defendant Holiday for a master use license of the sound recording, "Moonraker" to create the infringing derivative work, "Alien Superstar."

57. On or about September 6, 2022, Holiday, through entities he owned and controlled—Attribute Events Company and Foremost Poets Publishing—purported to grant Parkwood a nonexclusive license for the master use and composition of "Moonraker" for use in "Alien Superstar" by Beyoncé Knowles-Carter (the "Holiday License"). Holiday did not have authority to grant the Holiday License. Holiday had transferred all of his ownership rights in the master recording and copyright of "Moonraker" to Soundmen pursuant to the written and signed recording agreements described above. Those rights subsequently passed through

**SECOND AMENDED COMPLAINT**

the chain of title to Plaintiff. At the time the Holiday License was executed, Holiday possessed no ownership interest in the copyright that would authorize him to grant a license to Parkwood.

58. None of the defendants sought authorization from the Plaintiff, the copyright holder of the sound recording and composition, "Moonraker," for its use in the infringing work, "Alien Superstar."

59. After the release of the infringing album, "Renaissance," Defendant Knowles-Carter, without express authorization, began to publicly perform not only the infringing work, "Alien Superstar," but also the Plaintiff's "Moonraker" during both the Renaissance and Cowboy Carer tours. The Renaissance tour consisted of fifty-six shows, beginning on May 10, 2023, and concluding on October 1, 2023. The Cowboy Carter tour only consisted of thirty-two shows, beginning on April 28, 2025 and ending on July 26, 2025.

60. The Plaintiff did not authorize the defendants' reproduction, distribution, public performance of the sound recording, or creation of an unauthorized derivative work of "Alien Superstar." Defendants do not have any rights to reproduce, distribute, publicly perform, or create derivative works of samples of "Moonraker" in the infringing sound recording "Alien Superstar."

61. There are unmistakable similarities between the two works. Based upon a side-by-side comparison of the two songs, a layperson could hear similarities in

**SECOND AMENDED COMPLAINT**

the lyrics, arrangement, melody, core expression,  content, and other compositional elements in both songs and conclude that songs are essentially identical, and the infringing "Alien Superstar" clearly used the Plaintiff's "Moonraker" as a basis for the infringing "Alien Superstar." At all times relevant to this action, Defendants Knowles-Carter, Redmond, Solomon, and Penny have misappropriated many of the recognizable and key protected elements of the Plaintiff's work into their infringing work, "Alien Superstar." The infringing work, "Alien Superstar" misappropriates key protected elements of "Moonraker," to create an unauthorized derivative work. The infringing work samples, or lifts, a portion of the sound recording, "Moonraker" to create "Alien Superstar." More specifically, Defendants Knowles-Carter, Redmond, Solomon, and Penny sampled a portion of "Moonraker"  from the 0:21-0:31 minute mark that contains the performance of the lyrics, "Please do not be alarmed, remain calm. Do not attempt to leave the dancefloor. The DJ booth is conducting a troubleshoot of the entire system," and manipulated its performance and inserted the manipulated sample "Please do not be alarmed, remain calm. Do not attempt to leave the dance floor. The DJ booth is conducting a tr-tr-tr-troubleshoot of the entire system."  in the infringing work at the 0:01 minute mark. The infringing work, "Alien Superstar," misappropriates key protected elements of Plaintiff's "Moonraker" to create an unauthorized derivative work. The infringing work copies and samples a portion of Plaintiff's "Moonraker"

**SECOND AMENDED COMPLAINT**

to create the infringing "Alien Superstar." More specifically, Defendants Knowles-Carter, Redmond, Solomon, and Penny copies, or interpolates, the lyrics, content, melody and musical arrangement from the sound recording, "Moonraker," to create the infringing work. Moreover, both songs have the similar tempos and form structure. Recording and compositional analyses of the two works reveal that the infringing work samples the lyrics and vocal melodies from Moonraker.

62. All Defendants, without authority, have willfully copied and sampled many protected elements of the Plaintiff's copyrights and further infringed upon those copyrights by acts of reproduction, distribution, publish, display, and unauthorized creation of derivative works.

## FIRST CLAIM FOR RELIEF

**(Direct, Contributory and Vicarious Copyright infringement of "Moonraker" into the sound recording, "Alien Superstar" against all defendants)**

63. Plaintiff repeats and re-alleges all paragraphs of this Complaint as if fully set forth herein.

64. Plaintiff is the owner of the copyright in the sound recording, musical composition and lyrics of "Moonraker." Plaintiff's copyright of "Moonraker" was registered with the U.S. Copyright Office and bears Registration No. Sr0001027666.

23

**SECOND AMENDED COMPLAINT**

65. Upon information and belief, and without authorization or permission from the plaintiff, in direct violation of Plaintiff's rights, Defendants, have directly infringed the copyrights in Plaintiff's "Moonraker" by among other things: a) preparing unauthorized derivatives of Plaintiff's "Moonraker" in the form of "Alien Superstar;" b) reproducing copyrighted elements of the Plaintiff's "Moonraker" in "Alien Superstar;" c) distributing copies of "Alien Superstar," which contains copyrighted elements of Plaintiff's "Moonraker" and d) publishing, displaying, selling and licensing copies of "Alien Superstar," which contains copyrighted elements of Plaintiff's "Moonraker." None of the Defendants have paid Plaintiff, nor secured the authorization for the use of "Moonraker" in "Alien Superstar."

66. Moreover, without authorization or permission from Plaintiff, Defendants Knowles-Carter, Redmond, Solomon, and Penny sampled and copied Plaintiff's "Moonraker" in purporting to author the derivative sound recording, "Alien Superstar." Defendants Parkwood, Sony Music, Sony and WC have published, manufactured, distributed, sold and licensed copies of "Alien Superstar." None of Defendants have paid Plaintiff, nor secured the authorization for the use of "Moonraker" in "Alien Superstar."

67. At all times relevant to this action, Defendants Knowles-Carter, Redmond, Solomon, and Penny have misappropriated many of the recognizable

24

**SECOND AMENDED COMPLAINT**

and key protected elements of the Plaintiff's work into their infringing work, "Alien Superstar." The infringing work, "Alien Superstar" misappropriates key protected elements of "Moonraker," to create an unauthorized derivative work. The infringing work samples, or lifts, a portion of the sound recording, "Moonraker" to create "Alien Superstar." More specifically, Defendants Knowles-Carter, Redmond, Solomon, and Penny sampled a portion of "Moonraker" from the 0:21-0:31 minute mark that contains the performance of the lyrics, "Please do not be alarmed, remain calm. Do not attempt to leave the dancefloor. The DJ booth is conducting a troubleshoot of the entire system," and manipulated its performance and inserted the manipulated sample "Please do not be alarmed, remain calm. Do not attempt to leave the dance floor. The DJ booth is conducting a tr-tr-tr-troubleshoot of the entire system." in the infringing work at the 0:01 minute mark. The infringing works, "Alien Superstar," misappropriates key protected elements of Plaintiff's "Moonraker" to create an unauthorized derivative work. The infringing work copies and samples a portion of Plaintiff's "Moonraker" to create the infringing "Alien Superstar." More specifically, Defendants Knowles-Carter, Redmond, Solomon, and Penny copies, or interpolates, the lyrics, content, melody and musical arrangement from the sound recording, "Moonraker," to create the infringing work. Moreover, both songs have the similar tempos and form structure.

**SECOND AMENDED COMPLAINT**

Recording and compositional analyses of the two works reveal that the infringing work samples the lyrics and vocal melodies from Moonraker.

68. As a direct and proximate result of the Defendants' infringement, Plaintiff is entitled to its actual damages in addition to Defendants' profits that are attributable to the copyrighted material; moreover, plaintiff is entitled to other compensatory, statutory and punitive damages in an amount to be proven at trial.

69. Holiday directly infringed Plaintiff's copyright in "Moonraker" by purporting to license rights he did not possess to Parkwood and by participating in the creation of the infringing work "Alien Superstar."

70. Parkwood had actual knowledge, or at minimum constructive knowledge, that "Alien Superstar" incorporated an unauthorized sample of "Moonraker." The facts giving rise to Parkwood's knowledge include, but are not limited to: (a) the public availability of the copyright registration identifying Hirose Enterprise, LLC—not Holiday—as the copyright claimant; (b) the extensive, publicly visible commercial history of "Moonraker" under the Soundmen on Wax label and Plaintiff's control; and (c) Parkwood's status as a sophisticated entertainment company with the resources and obligation to conduct due diligence regarding the clearance of samples used in its productions.

71. Despite this knowledge, Parkwood materially contributed to the infringement by licensing, producing, marketing, and distributing "Alien

26

**SECOND AMENDED COMPLAINT**

Superstar" through streaming platforms, physical media, and live performances, thereby providing the means, facilities, and channels for the continued exploitation of the infringing work.

72. Parkwood's conduct constitutes contributory copyright infringement. As a direct and proximate result of Parkwood's contributory infringement, Plaintiff has suffered and continues to suffer damages.

73. With knowledge of the infringement, the Defendants Parkwood, Sony Music Entertainment, Sony and WC have induced, caused, or materially contributed to, the infringing conduct of others, such that they should be found to be contributorily liable.

74. Defendants Parkwood, Sony Music Entertainment, Sony and WC had the right and ability to control other infringers and have derived a direct financial benefit from that infringement such that Defendants should be found to be vicariously liable.

75. Parkwood had the right and ability to supervise and control the creation, production, and distribution of "Alien Superstar." As the entity responsible for the production, exploitation, and distribution of Beyoncé's recordings, Parkwood had the contractual and practical authority to approve, halt, or limit the release and distribution of "Alien Superstar," including the authority to require clearance of all samples prior to release.

27

**SECOND AMENDED COMPLAINT**

76. Parkwood derived a direct financial benefit from the exploitation of "Alien Superstar." Upon information and belief, Parkwood received revenues from the sales, streams, licensing fees, and other commercial exploitation of "Alien Superstar" and the album Renaissance. The commercial success of "Alien Superstar" directly contributed to Parkwood's revenues, and the distinctive spoken-word intro sampled from "Moonraker" was a recognizable and commercially significant element of the song.

77. Despite its right and ability to supervise and control the infringing activity, and despite the direct financial benefit it derived from the infringement, Parkwood failed to exercise its supervisory authority to prevent or halt the unauthorized use of Plaintiff's copyrighted material.

78. The infringement is continuing as the album, "Renaissance," on which "Alien Superstar" appears, continues to be sold and continues to be licensed for sale, downloads, streams, ringtones and/or mastertones, and other exploitations by Defendants or their agents. As such, Plaintiff has suffered and continues to suffer damages.

79. As a direct and proximate result of Defendants' infringement, Plaintiff has incurred attorneys' fees and costs, in amount according to proof, which are recoverable under 17 U.S.C. 504.

**SECOND CLAIM FOR RELIEF**

28

**SECOND AMENDED COMPLAINT**

**(Breach of Contract against Defendant Holiday)**

80. Plaintiff repeats and re-alleges all paragraphs of this Complaint as if fully set forth herein.

81. On or about January 15, 1998, Holiday and Soundmen entered into a written and signed exclusive recording agreement for the tracks "Moonraker" and "Grave Lifter," pursuant to which Holiday was paid $1,500 per track. Under this agreement, Holiday transferred 100% of copyright ownership in the master recordings to Soundmen. The agreement provided for a 50/50 split of publishing and licensing revenues between Soundmen and Holiday, which was a contractual revenue-sharing arrangement and did not constitute a retention by Holiday of any co-ownership interest in the copyright. Pursuant to this agreement, Holiday transferred all right, title, and interest in the master recordings and copyright ownership of Moonraker to Soundmen.

82. Defendant Holiday breached the said contract by creating a derivative of sound recording, "Moonraker," in "Alien Superstar" and the performance of the same, and engaging in a master use license of the sound recording, "Moonraker" to create the infringing work, "Alien Superstar."

83. As a direct and proximate result of the Defendants' breach, Plaintiff is entitled to all compensatory, statutory and punitive damages in an amount to be proven at trial.

29

**SECOND AMENDED COMPLAINT**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants and for the following relief:

A. A declaration that Defendants have infringed Plaintiff's copyrights;

B. An injunction, pursuant to 17 U.S.C. § 502, permanently enjoining Defendants and their agents, servants, employees, and all persons acting in concert or participation with them from further infringement of Plaintiff's copyrights;

C. Actual damages suffered by Plaintiff as a result of Defendants' infringement, or, at Plaintiff's election, statutory damages pursuant to 17 U.S.C. § 504(c);

D. Disgorgement of Defendants' profits attributable to the infringement, pursuant to 17 U.S.C. § 504(b)

E. Plaintiff's reasonable attorneys' fees and costs, pursuant to 17 U.S.C. § 505;

F. For pre-judgment and post-judgment interest according to law, as applicable;

G. Any such other or further relief as the Court may deem just and proper;

**SECOND AMENDED COMPLAINT**

H. For costs of suit incurred;

Dated: April 8, 2026                    THE HAYES LAW FIRM, PLC

By:    _____
                              DaShawn Hayes
                              Attorneys for Plaintiff
                              Hirose Enterprises, LLC

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in the above matter.

Dated: April 8, 2026                    THE HAYES LAW FIRM, PLC

By:    _____
                              DaShawn Hayes
                              Attorneys for Plaintiff
                              Hirose Enterprises, LLC

31

**SECOND AMENDED COMPLAINT**