DaShawn Hayes, State Bar No. 355912
THE HAYES LAW FIRM
A Professional Law Corporation
5757 Wilshire Blvd., Ste 656
Los Angeles, CA 90036
Tel.:          (323)570-0485
Email: dphayesesquire@gmail.com

*Attorneys for Plaintiff Hirose Enterprises, LLC*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HIROSE ENTERPRISES, LLC, | **Case No. 2:25-cv-06973-MEMF-AJR** |
| *Plaintiff,* | |
| *v.* | **PLAINTIFF'S OPPOSITION TO DEFENDANT PARKWOOD ENTERTAINMENT, LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| JOHN HOLIDAY, *professionally known as* FOREMOST POETS, PARKWOOD ENTERTAINMENT, LLC, SONY MUSIC ENTERTAINMENT, SONY MUSIC PUBLISHING (US), LLC, and W CHAPPELL MUSIC CORP. *d/b/a* WC MUSIC CORP., | Hearing Date: July 9, 2026 |
| | Time:  9:00AM |
| | Courtroom: 8B |
| *Defendants.* | Hon. Maame Ewusi-Mensah Frimpong |

<u>**PLAINTIFF'S OPPOSITION TO DEFENDANT PARKWOOD ENTERTAINMENT, LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**</u>

## TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION………………………………………………………………….5

II.   FACTUAL AND PROCEDURAL BACKGROUND……………………………….6

   a.   The Work and Its Original Creation…………………………………………..6

   b.   The 1998 Holiday-Soundmen Transfer…………………………………….....6

   c.   Soundmen's Continuous Exploitation of the Catalog
        and Subsequent Dealings With Holiday………………………………………7

   d.   The 2014 Formation of Hirose Enterprise LLC (Delaware)
        and the 2025 Copyright Registration………………………………………....8

   e.   Parkwood's 2022 Non-Exclusive License and
        the Alien Superstar Recording………………………………………………...8

   f.   The Formation of Hirose Enterprises, LLC (Florida)
        and the Filing of This Action……………………………………………….....8

   g.   Procedural Posture……………………………………………………………9

III.  LEGAL STANDARD…………………………………………………………….9

IV.   ARGUMENT…………………………………………………………………….9

   a.   Plaintiff Has Adequately Alleged Article III Standing……………………….9
   b.   The SAC Adequately Pleads Copyright Ownership and Standing…………….....15
   c.   The SAC Adequately Pleads Secondary Copyright Infringement…………………20
   d.   Even If Any Defect Remains, Dismissal With Prejudice Is
        Improper……………………………………………………………………….22

V.    CONCLUSION…………………………………………………………………..23

# TABLE OF AUTHORITIES

**CASES**                                                                                                                                    **PAGE(s)**

Air Aromatics, LLC v. Victoria's Secret Stores Brand Management,
744 F.3d 595 (9th Cir. 2014)…………………………………………..……15, 19

Ashcroft v. Iqbal,
556 U.S. 662 (2009) …………………………………………………………...…..9

Cox Communications, Inc. v. Sony Music Entertainment,
607 U.S. ___, No. 24-171 (2026) …………………………………...…6, 20, 21, 22, 23

Cummings v. United States,
704 F.2d 437 (9th Cir. 1983) …………………………………………..…...10, 11

Davis v. FEC,
554 U.S. 724 (2008) …………………………………………………………....10

Dolores Press, Inc. v. Robinson, 766 F. App'x 455, 460 (9th Cir. 2019) (mem.);
accord Doc's Dream, LLC v. Dolores Press, Inc.,
766 F. App'x 467, 471-72 (9th Cir. 2019) (mem.)……………………….......6, 9, 15, 16, 19, 22, 23

Dunmore v. United States,
358 F.3d 1107 (9th Cir. 2004)……………………………………………………11, 15

Eminence Capital, LLC v. Aspeon, Inc.,
316 F.3d 1048 (9th Cir. 2003)…………………………………………...……….9, 22

Fund Liquidation Holdings LLC v. Bank of America Corp.,
991 F.3d 370 (2d Cir. 2021) …………………………………………………11, 13, 14

In re Hashim,
379 B.R. 912 (B.A.P. 9th Cir. 2007) …………………………………………...…11, 14

In re Estate of Marvel,
Register of Wills Folio No. 152 (Del. Ch. Sept. 28, 2018)……………………….…...…13

Konigsberg International, Inc. v. Rice,
16 F.3d 355 (9th Cir. 1994) ……………………………………………………..18

Mutuelles Unies v. Kroll & Linstrom,
957 F.2d 707 (9th Cir. 1992) ……………………………………………………14

Magnuson v. Video Yesteryear,
85 F.3d 1424 (9th Cir. 1996) ……………………………………...…….5, 17, 18

PAE Government Services, Inc. v. MPRI, Inc.,
514 F.3d 856, 860 (9th Cir. 2007) …………………………………...…6, 15, 19

Paradise Creations, Inc. v. UV Sales, Inc.,
315 F.3d 1304 (Fed. Cir. 2003) ……………………………………………….…13

Perfect 10, Inc. v. Amazon.com, Inc.,
508 F.3d 1146, 1173 (9th Cir. 2007) …………………………………………....22

Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.,
142 S. Ct. 941 (2022) …………………………………………………………...5, 15, 19, 20, 23

United States ex rel. Wulff v. CMA, Inc.,
890 F.2d 1070 (9th Cir. 1989) …………………………………………………….……...14

Urantia Foundation v. Maaherra,
114 F.3d 955 (9th Cir. 1997) …………………………………………………...…20, 23

Whitaker v. Tesla Motors, Inc.,
985 F.3d 1173 (9th Cir. 2021) …………………………….…………………….…...…9, 15

Zurich Insurance Co. v. Logitrans, Inc.,
297 F.3d 528 (6th Cir. 2002) …………………………………………………….…13

## STATUTES

17 U.S.C. § 411(b)(2)……………………………………………………...…….5, 15

N.Y. Business Corporation Law § 402…………………………………………………...6

6 Del. C. § 18-1109……………………………………………………………...12, 20

17 U.S.C. § 102(a)(2), (7)………………………………………………………..18

17 U.S.C. § 411(b)(1)……………………………………………………………….20

N.Y. Tax Law § 203-a…………………………………………………………………7

## RULES

Fed. R. Civ. P.12(b)(6)…………………………………………….……………..5, 9, 17

Fed. R. Civ. P. 17(a)(3)………………………………………………...5, 6, 9, 10, 13, 14, 22, 23

Fed. R. Civ. P. 17(a)…………………………………………………………..10, 11, 12, 14

## I.    INTRODUCTION

Parkwood Entertainment, LLC ("Parkwood") moves to dismiss the Second Amended Complaint ("SAC") on three grounds, each of which fails as a matter of law.

First, Parkwood contends that Plaintiff lacks Article III standing because the named Plaintiff entity—Hirose Enterprises, LLC, a Florida limited liability company formed on August 6, 2025—did not exist on July 29, 2025, when the original Complaint was filed. Parkwood is correct that the time-of-filing rule applies, but it is wrong that the defect is fatal.

The named claimant on the March 2025 copyright registration for "Moonraker" is not the Florida entity but a separately existing Delaware limited liability company—Hirose Enterprise LLC—which was formed on October 16, 2014, and which Federal Rule of Civil Procedure 17(a)(3) authorizes Plaintiff to substitute as the real party in interest, with relation back to the original filing date.

Second, Parkwood challenges Plaintiff's statutory standing under the Copyright Act, contending that the 1998 chain-of-title link between author John Holiday and Soundmen on Wax, Ltd. is inadequately pled, that the 2025 copyright registration is invalid, and that the SAC's refined allegations contradict the prior pleadings in sham fashion.

Each contention falters under controlling Ninth Circuit authority. The SAC alleges that the 1998 Holiday-to-Soundmen transfer was "written and signed" (SAC ¶ 23)—an allegation that, taken as true and construed favorably to Plaintiff under Rule 12(b)(6), is adequate at the pleading stage.

The continuing commercial dealings between Holiday and Hirose Enterprise LLC in connection with the *Moonraker* catalog—including a September 14, 2017 Heads of Agreement governing two *Moonraker* derivative works (Hirose Decl. Ex. A) and the August 3, 2022 acknowledgment that Shuji Hirose is "the rightful rights holder" (Hirose Decl. ¶ 30; Hirose Decl. Ex. C)—corroborate the chain of title and confirm that the transferor and transferee are not in dispute about the prior transfer. *See Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1428 (9th Cir. 1996).

The registration validity argument is foreclosed by *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 142 S. Ct. 941 (2022), and the procedural referral mechanism of 17 U.S.C. § 411(b)(2).

And the sham-allegation argument fails under *PAE Government Services, Inc. v. MPRI, Inc.*, 514 F.3d 856 (9th Cir. 2007), which recognizes that refinement and clarification of chain-of-title allegations, as new facts emerge, is permissible.

Third, Parkwood contends that Plaintiff fails to plead secondary copyright infringement under the standard articulated in *Cox Communications, Inc. v. Sony Music Entertainment*, 607 U.S. ___, No. 24-171 (2026).

That contention misreads both *Cox Communications* and the SAC's allegations. Plaintiff has pled direct infringement by Parkwood's licensee, knowledge by Parkwood of competing claims through the August 3, 2022 communication record identifying Shuji Hirose as the rightful rights holder, and material contribution through Parkwood's facilitation of the unauthorized sampling.

Finally, and dispositively, even if the Court were to find the SAC's allegations deficient in any respect, dismissal with prejudice would be improper. The Ninth Circuit's *Dolores Press* trilogy holds that, where the real party in interest can be substituted or joined under Rule 17(a)(3), "[t]he court may not dismiss the action" without affording Plaintiff a reasonable opportunity to make that correction. *Dolores Press, Inc. v. Robinson*, 766 F. App'x 455, 460 (9th Cir. 2019) (mem.); accord *Doc's Dream, LLC v. Dolores Press, Inc.*, 766 F. App'x 467, 471-72 (9th Cir. 2019) (mem.).

For the reasons set forth below, the motion should be denied. Should the Court find any aspect of the SAC's pleading wanting, leave to amend should be granted to substitute the Delaware Hirose Enterprise LLC and/or Shuji Hirose individually as plaintiffs.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Work and Its Original Creation

In approximately 1998, John Holiday—performing as Foremost Poets—created the sound recording and musical composition entitled "Moonraker," including the distinctive ten-second introductory passage that is the subject of this litigation. (SAC ¶¶ 17-18.)

### B.   The 1998 Holiday-Soundmen Transfer

In 1998, Holiday executed a written and signed agreement transferring all right, title, and interest in "Moonraker" to Soundmen on Wax, Ltd. ("Soundmen"), a New York domestic business corporation incorporated on May 13, 1997 under N.Y. Business Corporation Law § 402. (SAC ¶¶ 19, 32; *see also*

Office of the New York Secretary of State Entity Information for Soundmen on Wax, Ltd. (DOS ID 2142697).)

Shuji Hirose was at all relevant times Soundmen's sole shareholder and Chief Executive Officer. (SAC ¶ 33; Hirose Decl. ¶ 3.)

The original physical copy of the 1998 written agreement was lost in a 2005 storage theft. (Hirose Decl. ¶ 6.)

**C.      Soundmen's Continuous Exploitation of the Catalog and Subsequent Dealings With Holiday**

From 1998 through the present, Soundmen and Hirose continuously exploited the *Moonraker* catalog through licensing agreements with international and domestic record labels, including but not limited to DJ Gigolo, Airplay, Junior London, and NRK. (SAC ¶ 40.)

On September 25, 2002, Soundmen was administratively dissolved by proclamation of the New York Department of State for non-payment of franchise tax under N.Y. Tax Law § 203-a.

Hirose nevertheless continued to administer the *Moonraker* catalog without interruption, in what he reasonably understood to be his capacity as the sole proprietor of the works.

By no later than 2017, the operations of the dissolved New York Soundmen on Wax, Ltd. corporation had been folded into the Delaware Hirose Enterprise LLC (formed in 2014), and Soundmen continued to operate as a "Label Division of Movement Factory / Hirose Enterprise LLC."

Movement Factory is a separate Hirose-controlled limited liability company that holds no independent ownership rights to *Moonraker*. (Hirose Decl. ¶ 12.)

On September 14, 2017, Holiday (signing through his entity Attribute Records) and Hirose (signing on behalf of "Soundmen On Wax A Label Division of Movement Factory / Hirose Enterprise LLC") executed a Heads of Agreement governing two specific *Moonraker* derivative works—the MasonFree Remix and the Chromophone Remixes—for a 2018 release (the "2017 Agreement"). (Hirose Decl. Ex. A.)

The 2017 Agreement provides that publishing rights to *Moonraker* are controlled by the "original publishers," which Plaintiff understands to include Paradoc Dream and Foremost Poets Publishing (Holiday's own publishing entity). (Hirose Decl. ¶ 18.)

---

PLAINTIFF'S OPPOSITION TO DEFENDANT PARKWOOD ENTERTAINMENT, LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT - 7

The 2017 Agreement does not address ownership of the original *Moonraker* sound recording, which remained with Soundmen as the original 1998 transferee and, following Soundmen's administrative dissolution, with Hirose Enterprise LLC as the operating successor in interest.

The parties' continuing commercial relationship is further documented by the August 7, 2016 Funktion One Deal Memo (Hirose Decl. Ex. D), which uses the identical letterhead and terms structure.

**D.     The 2014 Formation of Hirose Enterprise LLC (Delaware) and the 2025 Copyright Registration**

On October 16, 2014, Hirose Enterprise LLC was formed as a Delaware domestic limited liability company (file number 5623034). (Hirose Decl. ¶¶ 10, 25; Hirose Decl. Ex. B.) In March 2025, Hirose Enterprise LLC obtained federal copyright registration (Registration No. SR 1-027-666) for "Moonraker" as its named claimant. (SAC ¶ 34.)

At the time of registration, Hirose Enterprise LLC was, unbeknownst to Hirose, in administrative void status under Delaware law for non-payment of annual franchise tax.

On April 2, 2026, Hirose Enterprise LLC was revived through a "Renewal for Void" filing with the Delaware Secretary of State and is presently in good standing.

**E.     Parkwood's 2022 Non-Exclusive License and the Alien Superstar Recording**

On September 6, 2022, Parkwood executed a non-exclusive license agreement with John Holiday's wholly-owned entities, Attribute Events Company and Foremost Poets Publishing, for the use of "Moonraker" in the sound recording "Alien Superstar," released on the Beyoncé album *Renaissance*. (Doc. 38-2.)

The license carried a $10,000 advance, a 0.5% master royalty, and a 0.5% publishing royalty for use in perpetuity. (*Id.*)

On August 3, 2022, in communications regarding the license, Holiday confirmed that "all Parkwood paperwork must be forwarded to Shuji Hirose as the rightful rights holder." (Hirose Decl. ¶ 30; Hirose Decl. Ex. C.)

**F.     The Formation of Hirose Enterprises, LLC (Florida) and the Filing of This Action**

On August 6, 2025, after Hirose's relocation to Florida and the commencement of separate restaurant operations there, Hirose Enterprises, LLC was formed as a Florida limited liability company.

---

PLAINTIFF'S OPPOSITION TO DEFENDANT PARKWOOD ENTERTAINMENT, LLC'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT - 8

On July 29, 2025—approximately one week before the formation of the Florida entity—the original Complaint in this action was filed in the name of "Hirose Enterprises, LLC."

That naming reflected an understandable error: at the time, neither Hirose nor counsel appreciated that the named claimant on the copyright registration was the Delaware entity (Hirose Enterprise LLC, singular), not the Florida entity (Hirose Enterprises LLC, plural), then in formation.

### G.  Procedural Posture

Following the Court's March 25, 2026 order granting Parkwood's first motion to dismiss with leave to amend, Plaintiff filed the SAC on April 8, 2026. (Doc. 64.)

The SAC re-pled the chain of title to address the deficiencies identified in the Court's prior order, dropped the Lanham Act claim, and added factual detail regarding the 1998 written agreement (now alleged to have been written and signed), the 2002 administrative dissolution of Soundmen, Hirose's continuous personal administration of the catalog, and the parties' continuing commercial dealings through the present.

Parkwood filed the present motion on May 6, 2026. (Doc. 66.)

## III.  LEGAL STANDARD

On a motion to dismiss under Rule 12(b)(1) or 12(b)(6), the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021).

At the pleading stage, ambiguity in documents that bear on chain of title is construed favorably to the plaintiff. *Dolores Press*, 766 F. App'x at 459 ("The district court's selective reading of the agreement was improper, particularly at the pleading stage where the plaintiff is entitled to reasonable inferences in its favor.").

Dismissal with prejudice is reserved for cases in which no amendment could cure the deficiency. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

## IV.  ARGUMENT

### A.  Plaintiff Has Adequately Alleged Article III Standing, and Any Defect Is Curable Through Rule 17(a)(3) Substitution of the Delaware Hirose Enterprise LLC as the Real Party in Interest

---

PLAINTIFF'S OPPOSITION TO DEFENDANT PARKWOOD ENTERTAINMENT, LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT - 9

Parkwood's lead argument—that the Florida Hirose Enterprises, LLC could not have had Article III standing on July 29, 2025, because it did not exist until August 6, 2025—invokes a real but curable defect.

The defect is curable because the *real party in interest* with standing as to the *Moonraker* copyright was in existence at the time the suit was filed: the Delaware Hirose Enterprise LLC, which is the named claimant on the federal copyright registration and which Rule 17(a)(3) and the supporting Ninth Circuit case law authorize Plaintiff to substitute, with relation back to the original filing date.

### 1.    *The Time-of-Filing Rule Does Not Foreclose Rule 17(a)(3) Substitution Where the Real Party in Interest Existed at Filing*

Article III requires that the party invoking federal jurisdiction "have the requisite stake in the outcome when the suit is filed." *Davis v. FEC*, 554 U.S. 724, 734 (2008).

But "the party invoking jurisdiction" need not, under Federal Rule of Civil Procedure 17(a)(3), have been the originally named plaintiff.

Where the real party in interest existed at the time of filing and possessed the substantive claim, Rule 17(a)(3) authorizes joinder, substitution, or ratification by that real party in interest, with the substitution relating back to the date of the original filing.

The Ninth Circuit established this principle in *Cummings v. United States*, 704 F.2d 437 (9th Cir. 1983).

There, the court held that intervention by an insurer-subrogee operated as the practical equivalent of substitution of the real party in interest under Rule 17(a), and that the substitution related back to the filing of the original complaint. *Id.* at 439-40.

The court reasoned that "[b]ecause the insurance company as subrogee stands in the shoes of the insured, it is the real party in interest in the insured's suit to the extent of the subrogation. . . . [T]he insurer subrogee's complaint in intervention therefore has the same effect as pro tanto substitution of the real party in interest under Fed. R. Civ. P. 17(a).

Such a substitution relates back to the filing of the original complaint." *Id.* at 440 (citations omitted).

The Ninth Circuit reaffirmed and extended this principle in *Dunmore v. United States*, 358 F.3d 1107 (9th Cir. 2004).

*Dunmore* held that Rule 17(a) permits the real party in interest to ratify or be substituted into the action, with such ratification relating back to the original filing date where the initial naming error was an "understandable mistake." *Id.* at 1112-13.

The Ninth Circuit Bankruptcy Appellate Panel synthesized this doctrine in *In re Hashim*, 379 B.R. 912 (B.A.P. 9th Cir. 2007), explaining that under Ninth Circuit law, Rule 17(a) substitution "has the same effect as if the action had originally been commenced in the name of the real party in interest." *Id.* at 923.

The Second Circuit has applied this same principle directly to a fact pattern materially indistinguishable from the present case.

In *Fund Liquidation Holdings LLC v. Bank of America Corp.*, 991 F.3d 370 (2d Cir. 2021), the original named plaintiff (Cayman Islands dissolved funds) had no legal existence at the time the complaint was filed.

The Second Circuit nevertheless held that "Article III is satisfied so long as a party with standing to prosecute the specific claim in question exists at the time the pleading is filed. If that party (the real party in interest) is not named in the complaint, then it must ratify, join, or be substituted into the action within a reasonable time." *Id.* at 386.

The court reasoned that "filing a complaint in the name of a deceased or non-existent nominal plaintiff is akin to an error in the complaint's allegations of jurisdiction. And it is well-understood that a plaintiff may cure defective jurisdictional allegations, unlike defective jurisdiction itself, through amended pleadings." *Id.* at 388-89.

Although *Fund Liquidation Holdings* is not binding in this Circuit, its reasoning aligns with *Cummings* and *Dunmore* and is consistent with the federal Rules' policy that Rule 17(a) should be applied to "prevent forfeiture of an action when difficulty in identifying the real party in interest will arise." Fed. R. Civ. P. 17 advisory committee notes (1966 amendment).

> **2.   The Delaware Hirose Enterprise LLC Is the Real Party in Interest and Existed at the Time of Filing**

The named claimant on the March 2025 federal copyright registration for "Moonraker" is not the Florida Hirose Enterprises, LLC (which was not yet formed) but the Delaware Hirose Enterprise LLC, which was formed on October 16, 2014, and which exists at present in good standing with the Delaware Secretary of State.

The Delaware entity is the entity that obtained the registration, claimed the copyright on the certificate, and held the legal interest the Florida entity has sought to assert.

That the Delaware entity was in administrative void status at the time the original Complaint was filed does not defeat its real-party-in-interest status. As discussed in subsection 3 below, Delaware's revival statute, 6 Del. C. § 18-1109, operates retroactively to restore the LLC as though its certificate had never been canceled, validating acts undertaken during the void period and vesting all property, rights, and interests in the revived LLC as fully as they had previously been held.

The Delaware Hirose Enterprise LLC is therefore properly understood as having continuously existed since its formation in 2014, with continuous ownership of the *Moonraker* copyright as of its March 2025 registration.

The naming of the Florida entity in the original Complaint was an "understandable mistake" within the meaning of *Dunmore*. The Florida entity (Hirose Enterprises, LLC, plural) and the Delaware entity (Hirose Enterprise LLC, singular) differ by a single letter. They share a principal—Shuji Hirose. The Florida entity had been formed at or around the time of suit filing in connection with Hirose's relocation to Florida and his commencement of restaurant operations there.

The misalignment between the named Plaintiff and the registered claimant was a clerical error of the kind Rule 17(a) was designed to correct, not an attempt by an entity without rights to acquire a claim through post-filing maneuvering.

### 3.    *Delaware's Revival Statute Operates Nunc Pro Tunc Under 6 Del. C. § 18-1109*

Delaware's LLC revival statute, 6 Del. C. § 18-1109, provides that upon the filing of a certificate of revival, the LLC is restored "as though [its] certificate of formation had never been canceled," and that acts undertaken in the LLC's name during the canceled period are validated "with the same force and effect as though [the certificate] had remained continuously effective."

---

Property and rights vest in the revived LLC "as fully as they had previously been held," and the LLC remains liable for acts performed in its name before revival "as though [its] certificate had at all times remained effective." *Id.*

The Delaware Court of Chancery, construing the parallel revival provision under the Delaware General Corporation Law, has held that revival "restor[es] the entity as though it had not become void, validat[es] actions taken during the void period, and revest[s] property upon revival." *In re Estate of Marvel*, Register of Wills Folio No. 152 (Del. Ch. Sept. 28, 2018).

The LLC Act's revival language is, if anything, more explicit than the DGCL's, and there is no principled basis for reading the two statutes inconsistently on the question of retroactive effect.

Applied here, the Delaware Hirose Enterprise LLC's April 2, 2026 revival operates nunc pro tunc to (i) restore the LLC as though it had not been canceled during the relevant period, (ii) validate the March 2025 copyright registration that was issued in its name, and (iii) vest the *Moonraker* copyright in the LLC as fully as it had previously been held.

The Delaware Hirose Enterprise LLC is, for all legal purposes, treated as having continuously existed and continuously held the copyright.

### 4. *Parkwood's Reliance on the Time-of-Filing Rule Misapplies Federal Standing Doctrine*

Parkwood relies on a line of authority—including *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304 (Fed. Cir. 2003), and *Zurich Insurance Co. v. Logitrans, Inc.*, 297 F.3d 528 (6th Cir. 2002)—for the proposition that a complaint filed by a nonexistent plaintiff is an incurable nullity.

That so-called "nullity doctrine" is not the law of this Circuit. The Ninth Circuit has not adopted the nullity doctrine in any published decision, and the Second Circuit has expressly rejected it. *Fund Liquidation Holdings*, 991 F.3d at 386-87.

Indeed, *Fund Liquidation Holdings* persuasively explained why the nullity doctrine misapprehends the relationship between Article III standing and Rule 17(a)(3): "Article III standing has three elements: (i) the plaintiff must have suffered an injury in fact . . . (ii) there must be a causal connection between the injury and the conduct complained of; and (iii) it must be likely . . . that the injury will be redressed by a favorable judicial decision. . . . An assignment has no bearing on the first two

elements. . . . Nor can an assignment sever a pre-existing causal link between that injury and the defendant." *Id.* at 381.Here, the Delaware Hirose Enterprise LLC suffered the Article III injury when Parkwood released "Alien Superstar" with the unauthorized "Moonraker" sample in July 2022. The causal connection between that injury and Parkwood's conduct is direct. And the requested judicial relief— damages, injunctive relief, and an accounting—would redress the injury. Article III is satisfied. The remaining question is one of real-party-in-interest under Rule 17(a)(3), and that question is answered by *Cummings*, *Dunmore*, and *Fund Liquidation Holdings* in Plaintiff's favor.

Parkwood may rely on *United States ex rel. Wulff v. CMA, Inc.*, 890 F.2d 1070 (9th Cir. 1989), for the proposition that Rule 17(a) cannot cure a standing defect. That reliance would be misplaced.

The Ninth Circuit Bankruptcy Appellate Panel addressed *Wulff* directly in *In re Hashim*, 379 B.R. 912, 923–24 (B.A.P. 9th Cir. 2007), and concluded that its Rule 17(a) discussion was dictum: "*Wulff* contained dictum indicating that Rule 17(a) should not be used to circumvent a limitations period," but "that appeal did not present a Rule 17(a) issue of ratification, substitution, or joinder by the real party in interest." *Id.* at 923.

More significantly, the Ninth Circuit itself has since cabined *Wulff* in a published opinion. In *Mutuelles Unies v. Kroll & Linstrom*, 957 F.2d 707 (9th Cir. 1992), the court "rejected the argument based on *Wulff* that Rule 17(a) 'ratification is improper if used to defeat a statute of limitations.'" *Hashim*, 379 B.R. at 924 (discussing *Kroll & Linstrom*, 957 F.2d at 712). Rather, *Kroll & Linstrom* held that "a trial court must accept a ratification by a real party in interest" provided the ratifying party (1) authorizes continuation of the action, and (2) agrees to be bound by the result. *Id.* (citing *Kroll & Linstrom*, 957 F.2d at 712).

*Wulff* is further distinguishable on its facts. There, the plaintiffs had no cause of action whatsoever under the Miller Act when they filed suit—their state court judgment had no connection to the federal construction project. *Wulff*, 890 F.2d at 1072. They admitted filing suit solely "in order to toll the statute of limitations" and obtained the cause of action by assignment eight months after the limitations period expired. *Id.* at 1074–75. The court refused to apply Rule 17(a) because "there was no difficulty and no mistake in determining who was the proper party to bring suit." *Id.* at 1075.

---

Here, the Delaware Hirose Entity held the copyright in "Moonraker" at the time this action was commenced; the underlying infringement claim existed; and the naming of the wrong Hirose entity was an honest mistake arising from genuine confusion between two entities with nearly identical names controlled by the same individual. (Hirose Decl. ¶¶ 23.)

This is precisely the type of "understandable mistake" that both *Wulff* and *Dunmore* recognized Rule 17(a) was designed to address. *See Wulff*, 890 F.2d at 1075; *Dunmore*, 358 F.3d at 1112–13.

## B.    The SAC Adequately Pleads Copyright Ownership and Statutory Standing

Parkwood's second argument—that Plaintiff has not adequately alleged ownership of the *Moonraker* copyright—fails on multiple grounds. The chain of title pled in the SAC is sufficient at the Rule 12 stage; the 2015 New Mix Agreement satisfies § 204(a)'s writing requirement under *Magnuson*; the SAC's refined allegations are permissible refinement under *PAE Government Services*, not sham contradiction under *Air Aromatics*; and the registration validity argument cannot proceed without the procedural referral required by 17 U.S.C. § 411(b)(2) under *Unicolors*.

### 1.    The Chain of Title Is Adequately Pled at the Rule 12 Stage

The SAC alleges that John Holiday transferred the *Moonraker* copyright to Soundmen on Wax, Ltd. by written and signed agreement in 1998. (SAC ¶¶ 19–20, 23.)

The loss of the original physical copy in a 2005 storage theft is attested to by Shuji Hirose. (Hirose Decl. ¶ 6.)

At the pleading stage, these allegations must be accepted as true. *Iqbal*, 556 U.S. at 678. Parkwood's contention that the SAC's allegations are "implausible" because they are unaccompanied by the actual 1998 writing inverts the Rule 12 standard.

A complaint need not attach the documents on which it relies; it need only "plausibly give[] rise to an entitlement to relief." *Whitaker*, 985 F.3d at 1176 (quoting *Iqbal*, 556 U.S. at 679).

The Ninth Circuit's recent decisions in the *Dolores Press* trilogy are directly on point. There, as here, the defendants attacked the plaintiff's chain-of-title allegations as inadequately pled.

The Ninth Circuit reversed, holding that the district court erred in resolving chain-of-title ambiguities against the plaintiff at the pleading stage. *Dolores Press*, 766 F. App'x at 459.

The same rule applies here.

---

### 2.    The 1998 Transfer Is Adequately Pled, and Subsequent Dealings Corroborate It

The Court need not, at the Rule 12 stage, determine whether the 1998 transfer occurred or its precise terms.

The SAC alleges that the transfer was written and signed (SAC ¶ 23), and the loss of the original physical copy in a 2005 storage theft is attested to by Shuji Hirose (Hirose Decl. ¶ 6). Those allegations must be accepted as true. *Iqbal*, 556 U.S. at 678.

Parkwood's contention that the absence of the 1998 writing renders the SAC's chain of title implausible is precisely the kind of pleading-stage adverse-inference argument the *Dolores Press* trilogy forecloses. *Dolores Press*, 766 F. App'x at 459 (district court's "selective reading of the agreement was improper, particularly at the pleading stage where the plaintiff is entitled to reasonable inferences in its favor").

The SAC also pleads—and the documentary record corroborates—that Holiday and Hirose Enterprise LLC have continued to deal with one another in connection with the *Moonraker* catalog through the present.

On September 14, 2017, Holiday (signing through his entity Attribute Records) and Shuji Hirose (signing on behalf of "Soundmen On Wax A Label Division of Movement Factory / Hirose Enterprise LLC") executed a Heads of Agreement governing two specific *Moonraker* derivative works—the MasonFree Remix and the Chromophone Remixes—for a 2018 release (the "2017 Agreement"). (Hirose Decl. Ex. A.)

The 2017 Agreement is the document SAC ¶ 37 references as the "2015 New Mix Agreement"; the SAC's reference to 2015 reflects an inadvertent date inaccuracy, which Plaintiff will correct in any Third Amended Complaint. (Hirose Decl. ¶ 15.)

The substance of the SAC's allegation—that there exists a written agreement between Holiday and Soundmen/Hirose Enterprise LLC concerning the *Moonraker* catalog—is supported by the 2017 Agreement and uncontested by either signatory.

The 2017 Agreement confirms three propositions material to the chain-of-title analysis at this stage: (i) Holiday and Hirose Enterprise LLC have been transacting with one another in connection with *Moonraker* over a sustained period predating this litigation; (ii) the dissolved New York Soundmen on

---

Wax, Ltd. entity had been folded into the Delaware Hirose Enterprise LLC by 2017, well before any allegation of post-filing manipulation of corporate form; and (iii) Holiday has consistently recognized Hirose Enterprise LLC as a counterparty in the exploitation of the *Moonraker* catalog.

The 2017 Agreement is not the only corroborating document. On August 7, 2016, Holiday and Hirose executed an earlier Heads of Agreement on the identical "Soundmen On Wax A Label Division of Movement Factory / Hirose Enterprise LLC" letterhead, governing the Foremost Poets track "Funktion One." (Hirose Decl. Ex. C.)

The 2016 Deal Memo uses the same form, the same 50/50 royalty split, the same advance structure, and the same "controlled by original publishers" language as the 2017 Agreement. Together, these two agreements establish a documented pattern of dealing between Holiday and Hirose Enterprise LLC spanning at least 2016 through 2017—years before this litigation—under a consistent organizational structure in which Soundmen on Wax operated as a label division of the Delaware Hirose Entity.

This is precisely the kind of corroborative course-of-dealing evidence that *Magnuson* contemplates as sufficient to support the existence of an earlier transfer. *See Magnuson*, 85 F.3d at 1428.

Parkwood may argue that the 2017 Agreement's labels of Holiday as Licensor and Hirose Enterprise LLC as Licensee for the 2018 remix project contradict the SAC's pleading of a 1998 transfer.

The argument fails for three reasons. First, the 2017 Agreement is limited by its terms to two specific derivative works and to defined commercial rights in those works; it does not purport to address ownership of the original *Moonraker* composition or master recording.

Even where a copyright owner has assigned its rights, parties may reasonably continue to seek the author's involvement in new derivative works, particularly where the author retains a continuing royalty interest in the catalog.

Second, the 2017 Agreement is a heads-of-agreement document executed by non-lawyer principals; its labels are not the kind of considered legal admissions that would, at the pleading stage, overcome the SAC's express allegations of a 1998 transfer.

Third, and most importantly, any inconsistency between the 2017 Agreement and the SAC's allegations is, at worst, a factual dispute. Factual disputes are not resolved on Rule 12.

To the extent Parkwood seeks to extract a separate argument from the 2017 Agreement's reference to "original publishers," that argument is equally unavailing.

The 2017 Agreement provides that publishing rights to *Moonraker* are controlled by the "original publishers," which Plaintiff understands to include Paradoc Dream and Foremost Poets Publishing (Holiday's own publishing entity). (Hirose Decl. ¶ 18.)

Publishing rights and sound recording rights are distinct copyright interests under federal law. *See* 17 U.S.C. § 102(a)(2), (7).

Plaintiff's claim against Parkwood is grounded principally in infringement of the *Moonraker* sound recording—the work Parkwood and its licensee sampled in "Alien Superstar"—not in infringement of the underlying composition.

The 2017 Agreement does not address sound recording ownership, which remained with Soundmen as the original 1998 transferee and, following Soundmen's administrative dissolution, with Hirose Enterprise LLC as the operating successor in interest.

The publishing-rights language of the 2017 Agreement is therefore immaterial to the core of the infringement claim asserted in the SAC.

The Ninth Circuit's analysis in *Magnuson v. Video Yesteryear*, 85 F.3d 1424 (9th Cir. 1996), reinforces this point. *Magnuson* held that a later writing—there, a 1993 Memorandum of Assignment—could satisfy 17 U.S.C. § 204(a) where it confirmed a prior transfer that the transferor and transferee did not dispute had occurred. *Id.* at 1428.

Footnote 1 of the *Magnuson* opinion explicitly distinguished *Konigsberg International, Inc. v. Rice*, 16 F.3d 355 (9th Cir. 1994), on the ground that *Konigsberg* involved a true dispute between transferor and transferee about whether and on what terms the transfer occurred. *Magnuson*, 85 F.3d at 1428 n.1.

Here, neither Holiday nor Hirose has ever disputed that the 1998 transfer occurred. To the contrary, Holiday's continued commercial dealings with Hirose Enterprise LLC in connection with the Foremost Poets catalog—including the 2016 Funktion One Deal Memo (Hirose Decl. Ex. C), the 2017 Moonraker remixes Agreement (Hirose Decl. Ex. A), and the August 3, 2022 acknowledgment that "all Parkwood

---

PLAINTIFF'S OPPOSITION TO DEFENDANT PARKWOOD ENTERTAINMENT, LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT - 18

paperwork must be forwarded to Shuji Hirose as the rightful rights holder" (Hirose Decl. ¶ 25)—confirm Holiday's recognition of the 1998 transfer.

In the alternative, were the Court to view the chain of title as inadequately documented at this stage, the proper response is leave to amend rather than dismissal.

As discussed in Part IV.D below, leave to amend is the appropriate remedy under both Ninth Circuit law generally and the *Dolores Press* trilogy specifically.

### 3. *The SAC's Refined Allegations Are Permissible Refinement Under PAE Government Services, Not Sham Contradiction Under Air Aromatics*

Parkwood contends that the SAC's allegations regarding the chain of title— particularly the new factual detail concerning the 1998 written agreement, Soundmen's 2002 dissolution, and Hirose's continuous administration of the catalog—directly contradict the prior pleadings and should be disregarded as "sham" under *Air Aromatics, LLC v. Victoria's Secret Stores Brand Management*, 744 F.3d 595 (9th Cir. 2014). That characterization is incorrect.

The Ninth Circuit has been clear that the *Air Aromatics* sham-allegation doctrine reaches only direct, irreconcilable contradiction. Mere refinement, supplementation, or clarification of allegations as new facts come to light is not "sham." *PAE Government Services, Inc. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007) (holding that inconsistency alone does not render a pleading a sham; parties are entitled to reshape allegations as facts emerge).

Here, the SAC's allegations do not contradict the prior pleadings; they supplement them with detail that emerged through Plaintiff's continued investigation and through the meet-and-confer process.

The original Complaint and FAC alleged that Plaintiff acquired its rights through Soundmen. The SAC adds factual specificity about the underlying chain—that the 1998 Holiday-Soundmen agreement was written and signed, that the physical copy was lost in 2005, and that Hirose administered the catalog personally following Soundmen's 2002 dissolution.

None of this contradicts what came before; it clarifies it.

### 4. *The Copyright Registration Is Valid; Unicolors Requires § 411(b)(2) Referral Before Invalidation*

Parkwood's contention that the March 2025 copyright registration is invalid because it was issued to an entity that did not exist at the time the original Complaint was filed misapprehends the governing legal framework.

As established above, the Delaware Hirose Enterprise LLC, the named claimant on the registration, was formed in 2014 and was therefore in existence (although in administrative void status) at the time of the March 2025 registration.

Under 6 Del. C. § 18-1109, the LLC's April 2026 revival operates nunc pro tunc to validate the registration.

Even if the Court were to find some technical inaccuracy in the registration certificate, the Supreme Court's decision in *Unicolors* and the Ninth Circuit's decision in *Urantia Foundation v. Maaherra*, 114 F.3d 955 (9th Cir. 1997), foreclose invalidation on the pleadings.

Under 17 U.S.C. § 411(b)(1), a registration is invalidated only where "(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." *Unicolors*, 142 S. Ct. at 944-45.

Even where these elements are satisfied, a court must, under § 411(b)(2), "request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." *Id.* at 945.

*Urantia* further holds that inadvertent claimant-identification errors do not ordinarily invalidate a registration absent fraud or prejudice. 114 F.3d at 963.

Parkwood has alleged no fraud, no knowledge of inaccuracy, and no materiality. The registration is presumptively valid. *See* 17 U.S.C. § 410(c). Invalidation on a motion to dismiss, without the procedural referral mandated by § 411(b)(2), is not available.

### C.    The SAC Adequately Pleads Secondary Copyright Infringement

Parkwood's third argument—that Plaintiff fails to state a claim for secondary infringement under *Cox Communications*—misreads both the SAC and the decision.

Plaintiff has pled the elements of contributory and vicarious infringement against Parkwood in connection with its license of the unauthorized *Moonraker* sample used in "Alien Superstar."

---

### 1.     Direct Infringement Is Adequately Pled

The SAC alleges that Parkwood's licensee (namely, Beyoncé Knowles-Carter and her recording entities) reproduced, distributed, performed, and displayed the *Moonraker* composition and sound recording in "Alien Superstar" without authorization from Plaintiff or its predecessors-in-interest. (SAC ¶¶ 48–49, 51.)

Parkwood does not seriously dispute that, accepting the SAC's allegations as true, direct infringement is adequately pled.

### 2.     Contributory and Vicarious Liability Are Adequately Pled Even Under Cox Communications

In Cox Communications, Inc. v. Sony Music Entertainment, 607 U.S. ___, No. 24-171 (2026), the Supreme Court held that a service provider "is contributorily liable for a user's infringement only if it intended that the provided service be used for infringement," and that such intent may be shown "only if the party induced the infringement or the provided service is tailored to that infringement." Id., slip op. at 2. The decision addressed an internet service provider that merely continued providing general-purpose internet access to subscribers whose accounts were associated with infringement. Parkwood's conduct is categorically different.

The SAC's allegations against Parkwood meet this heightened standard. Plaintiff alleges, *inter alia*: (a) that Parkwood entered into a written, non-exclusive license agreement with Holiday in September 2022 specifically to obtain authorization to sample *Moonraker* (Doc. 38-2); (b) that the August 3, 2022 communication record explicitly stated that "all Parkwood paperwork must be forwarded to Shuji Hirose as the rightful rights holder" (Hirose Decl. ¶25); (c) that despite this notice, Parkwood proceeded to obtain the license from Holiday alone and to facilitate the use of *Moonraker* in "Alien Superstar"; and (d) that Parkwood retained the financial benefits of the unauthorized exploitation.

These allegations establish affirmative inducement of the unauthorized use, not merely passive failure to prevent it.

Vicarious liability is separately pled: Parkwood had the right and ability to control the use of *Moonraker* in "Alien Superstar" through its licensing arrangement with Holiday and its production role

in the *Renaissance* album, and Parkwood obtained a direct financial benefit from that use. (SAC ¶¶ 75–77.)

Vicarious liability, unlike contributory liability, does not require knowledge or inducement. *See, e.g., Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007). *Cox Communications* does not disturb that doctrine.

### D.     Even If Any Defect Remains, Dismissal With Prejudice Is Improper

Should the Court find any aspect of the SAC's pleading wanting, dismissal with prejudice would be improper.

The Ninth Circuit has repeatedly held that leave to amend should be granted freely where amendment could cure the deficiency. *Eminence Capital*, 316 F.3d at 1052.

Where the deficiency concerns the identity of the real party in interest, the *Dolores Press* trilogy goes further: dismissal "may not" occur before a reasonable opportunity for substitution or joinder under Rule 17(a)(3). *Dolores Press*, 766 F. App'x at 460; *Doc's Dream*, 766 F. App'x at 471-72.

Specifically, the *Doc's Dream* court held: "[T]he addition of the copyright holder as a party is not 'ratification'—let alone improper ratification—under Rule 17(a)(3). It is joinder of the real party in interest, which would eliminate the statutory standing defect and any other defect under Rule 17(a). . . . [U]nder the plain language of that rule, '[t]he court may not dismiss [the] action' without giving a reasonable time for [the real party in interest] to join or be substituted into the action." 766 F. App'x at 471-72 (quoting Fed. R. Civ. P. 17(a)(3)).

This rule is decisive here. Even on Parkwood's most charitable reading of the SAC, the operative defect is one of party identity, not the absence of any underlying copyright claim. The Delaware Hirose Enterprise LLC—the actual registered claimant—exists, is in good standing, and can be substituted under Rule 17(a)(3).

Shuji Hirose individually can be added as a co-plaintiff to the extent the Court has concerns about which entity holds the rights.

Whatever deficiency the Court might find in the SAC's current framing, the *Dolores Press* trilogy forbids dismissal without affording Plaintiff a reasonable opportunity to make the necessary corrections.

Plaintiff is concurrently filing a motion under Rule 17(a)(3) and Rule 21 seeking leave to substitute the Delaware Hirose Enterprise LLC as Plaintiff and to join Shuji Hirose individually as a co-plaintiff.

In the alternative, should the Court find that the SAC's allegations are deficient in any respect that cannot be cured through Rule 17(a)(3) substitution alone, Plaintiff respectfully requests leave to file a Third Amended Complaint to: (i) correct the date inaccuracy in SAC ¶ 37 (which references a "2015 New Mix Agreement" that is in fact the September 14, 2017 Heads of Agreement attached as Hirose Decl. Ex. A); (ii) narrow the chain-of-title allegations to focus on the *Moonraker* sound recording, which is the work at issue in Parkwood's infringement; (iii) attach the 2017 Agreement, the Delaware revival documentation, the August 3, 2022 communication record, and any additional supporting agreements between Holiday and Hirose Enterprise LLC; and (iv) include such additional factual detail as may further refine the chain of title from Holiday to Soundmen to Shuji Hirose individually to Hirose Enterprise LLC.

## V.    CONCLUSION

For the foregoing reasons, Parkwood's motion to dismiss should be denied. The Court should hold that (i) the SAC adequately alleges Article III standing through the Delaware Hirose Enterprise LLC, the real party in interest, who can be substituted under Rule 17(a)(3) with relation back to the original filing; (ii) the SAC adequately pleads copyright ownership and statutory standing under *Magnuson*, *Unicolors*, *Urantia*, and the *Dolores Press* trilogy; and (iii) the SAC adequately pleads secondary infringement, including under the *Cox Communications* standard.

To the extent the Court identifies any remaining deficiency, leave to amend should be granted to substitute the Delaware Hirose Enterprise LLC, to join Shuji Hirose individually, and to attach the supporting transfer documentation referenced in the SAC.

DATED:    May 20, 2026

---

Respectfully Submitted,

/s/ DaShawn Hayes

_____
DaShawn Hayes, State Bar No. 355912

THE HAYES LAW FIRM
A Professional Law Corporation
5757 Wilshire Blvd., Ste 656
Los Angeles, CA 90036

Tel.:            (323)570-0485
Email: dphayesesquire@gmail.com

*Attorneys for Plaintiff Hirose Enterprises, LLC*

CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, Hirose Enterprises, LLC, certifies that this brief contains 6,616 words, which complies with Local Rule 11-6.1 and the word limit and the word limit set by the Standing Order dated August 27, 2025.

Dated: May 20, 2026               By: /s/ DaShawn Hayes

                                  _____
                                  DaShawn Hayes

PLAINTIFF'S OPPOSITION TO DEFENDANT PARKWOOD ENTERTAINMENT, LLC'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT - 24